IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MARK PEARSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 20-cv-309-DWD |
| ) | |
| ALEX HAWTHORNE, ) | |
| GERARD SPRATT, and ) | |
| JAMES MURRAY, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM & ORDER

**DUGAN, District Judge:**

Plaintiff Mark Pearson alleges that he was unlawfully stopped, arrested, and searched by Defendants Alex Hawthorne, Gerard Spratt, and James Murray, officers with the Glen Carbon, Illinois Police Department on September 11, 2019. Now before the Court is Defendants' motion for summary judgment. (Doc. 21). Plaintiff filed a brief response (Doc. 26) to which Defendants replied (Doc. 27). Defendants' motion is fully briefed and ripe for ruling. For the reasons delineated below, Defendants' motion for summary judgment is granted in part.

### FACTUAL BACKGROUND

In his complaint, Plaintiff Mark Pearson alleges that he was pulled over "for the purported offense of not using a turn signal to merge onto Interstate 270 from Illinois State Route 159 and its merge ramp." (Doc. 1-1, p. 1). On September 11, 2019, Defendant Alex Hawthorne was working as a police officer with the Glen Carbon Police Department. While driving southbound on State Route 159, he saw a car in front of him

change lanes across marked lane lines and move into the turn lane to merge onto westbound Interstate 270. The driver did not use a turn signal before changing lanes. Believing that he had witnessed a traffic violation, Hawthorne initiated a traffic stop. The driver of the car pulled over before merging onto the highway. Hawthorne walked up to the car and asked the driver, later identified as Mark Pearson, for his license and proof of insurance. Pearson refused to provide either document.

According to Hawthorne, Pearson's refusal to provide identification impeded the traffic stop, and he placed Pearson under arrest for obstructing a police officer. Pearson was searched incident to the arrest, and Officer Hawthorne called for a tow truck for Pearson's car after taking him into custody. An inventory search of the car was conducted pursuant to standard policies prior to towing. During the search, a loaded handgun was discovered in the glove box of Pearson's car. Hawthorne was unable to confirm that Pearson had a valid conceal and carry permit, leading him to believe that the weapon was illegally possessed.

Following his arrest, Pearson was cited for failure to use a turn signal (625 ILCS 5/11-804(d)), obstructing a police officer (720 ILCS 5/31-1(a)), a concealed carry violation (720 ILCS 5/23-1(a)(4)), and operating an uninsured motor vehicle (625 ILCS 5/3-707(a)). In his complaint, Pearson alleges that the Madison County State's Attorney agreed to *nolle pros* all charges. Pearson submitted an affidavit with his response to Defendants' motion for summary judgment. In it, he indicates that he had a liability insurance policy on September 11, 2019. He also states that he had a valid Missouri concealed carry permit. Pearson denies physically resisting any police officer on September 11, 2019, and states

that he "used a turn signal to change lanes on Illinois State Route 159 on September 11, 2019 at the date, time, and location referenced [in Defendants' memorandum in support of their summary judgment motion] where Officer Alex Hawthorne states that I did not use a turn signal." (Doc. 26-1).

## SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56 governs motions for summary judgment. Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. *See Archdiocese of Milwaukee v. Doe,* 743 F.3d 1101, 1105 (7th Cir. 2014)(citing FED. R. CIV. PROC. 56(a)). *Accord Anderson v. Donahoe,* 699 F.3d 989, 994 (7th Cir. 2012). A genuine issue of material fact remains "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). *Accord Bunn v. Khoury Enterpr., Inc.,* 753 F.3d 676, 681-682 (7th Cir. 2014).

In assessing a summary judgment motion, the district court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party. *See Anderson*, 699 F.3d at 994; *Delapaz v. Richardson*, 634 F.3d 895, 899 (7th Cir. 2011). As the Seventh Circuit has explained, and as required by Rule 56(a), "we set forth the facts by examining the evidence in the light most favorable to the non-moving party, giving [him] the benefit of reasonable, favorable inferences and resolving conflicts in the evidence in [his] favor." *Spaine v. Community Contacts, Inc.*, 756 F.3d 542, 544 (7th Cir. 2014).

ANALYSIS

1. Defendants Gerard Spratt and James Murray

There are no facts in the record related to the involvement of Defendants Gerard Spratt and James Murray in the traffic stop. Only persons who cause or participate in an alleged constitutional deprivation are responsible under 42 U.S.C. § 1983. *See Greeno v. Daley*, 414 F.3d 645, 656-657 (7th Cir. 2005). Neither Spratt nor Murray is mentioned in the body of any party's briefing on the pending motion for summary judgment. Their names are not included in any affidavit or deposition testimony before the Court. Pearson's affidavit vaguely references that "Glen Carbon Police Department officers located [his] Missouri driver's license" and that he "did not physically resist any police officer," but these statements are too ambiguous at summary judgment to provide sufficient evidence of any constitutional violation by Defendant Murray or Defendant Spratt. As such, both Defendants are entitled to summary judgment.

2. Defendant Alex Hawthorne

There is a dispute as to whether Plaintiff used his turn signal before switching lanes to move into the lane to merge onto Interstate 270. As an initial note, Illinois law requires drivers to signal before switching lanes. *See* 625 ILCS 5/11-804(d); *see also* 625 ILCS 5/11-709. Here, Defendant Hawthorne maintains that he watched as Plaintiff crossed from one clearly marked lane to another without using a turn signal, as required to establish probable cause for a traffic stop for a violation of 625 ILCS 5/11-804(d). *See United States v. Reeves*, 796 F.3d 738, 741 (7th Cir. 2015)(noting that traffic stops may be made when an officer has "probable cause to believe that a traffic violation

occurred")(quoting *United States v. Muriel*, 418 F.3d 720, 724 (7th Cir. 2005)). If the traffic stop was supported by probable cause, then Pearson's arrest and search incident to arrest likely pass constitutional muster, as does the inventory search of his vehicle prior to towing. *See Jones v. City of Elkhart, Ind.*, 737 F.3d 1107, 1114-15 (7th Cir. 2013)(finding a warrantless arrest following traffic stop that was supported by probable cause constitutionally permissible); *see also United States v. Cherry*, 436 F.3d 769, 772 (7th Cir. 2006)(citing *United States v. Wilson*, 938 F.2d 785, 788 (7th Cir. 1991))(An inventory search of a car prior to towing is "lawful if conducted pursuant to standard police procedures aimed at protecting the owner's property – and protecting the police from the owner's charging them with having stolen, lost, or damaged his property."). That is to say, if Hawthorne had probable cause to make the traffic stop, then he would be entitled to summary judgment on all claims based on the arguments before the Court.

"An officer has probable cause for a traffic stop when she has an 'objectively reasonable' basis to believe a traffic law has been violated." *United States v. Dowthard*, 500 F.3d 567, 569 (7th Cir. 2007)(quoting *United States v. McDonald*, 453 F.3d 958, 960 (7th Cir. 2006)). Here, however, the dispute about turn signal use raises a genuine dispute of material fact as to whether Hawthorne had probable cause to make the stop. Hawthorne argues that Pearson's statement that he used his turn signal, not raised until the affidavit submitted with his response to summary judgment, does not negate the existence of probable cause for the traffic stop because it does not contradict Hawthorne's statements about what he observed. He maintains that he observed Pearson change lanes without signaling and that his observation is uncontroverted.

Hawthorne points to *Williams v. Brooks*, 804 F.3d 936 (7th Cir. 2016), to suggest that summary judgment is not precluded even with Pearson's statements because a dispute over whether a turn signal is used does not necessarily create a dispute of fact. In *Williams*, however, while the plaintiff was pulled over for failing to signal, the record at summary judgment included a video that showed the plaintiff failing to use a turn signal, and the plaintiff's testimony about whether he used a turn signal was ambiguous. *Id.* at 942-43. Here, while Pearson's affidavit does not state that Hawthorne did not observe him change lanes without signaling, it is a reasonable inference that, if he used his turn signal as he claims, Hawthorne could not have witnessed a traffic violation. As a result, Pearson provides just enough information to rebut Hawthorne's testimony and to create a genuine issue of material fact as to whether Hawthorne actually observed a traffic violation. The disputes between the parties about the extent to which Plaintiff's statements may be uncorroborated go to how to construe and weigh the evidence, which is best left for the trier of fact. *See Huff v. Reichert*, 744 F.3d 999 (7th Cir. 2014). Accordingly, the Court finds that there is a material dispute of fact precludes summary judgment in favor of Defendant Hawthorne.

## Conclusion

For the above-stated reasons, Defendants' motion for summary judgment (Doc. 21) is **GRANTED in part** and **DENIED in part**. The motion is granted as to all claims against Defendants Spratt and Murray and denied as to all claims against Defendant Hawthorne. At the close of the case, the Clerk of Court shall enter judgment in favor of

Defendant Gerald Spratt and Defendant James Murray and against Plaintiff Mark Pearson.

This matter remains set for a status conference on March 25, 2021. The parties should be prepared to discuss potential trial dates and whether a settlement conference could prove fruitful.

**SO ORDERED.**

Dated: March 3, 2021

_____
DAVID W. DUGAN
United States District Judge